**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 781 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated May |
| | : | 16, 2019 in the Court of Common |
| | : | Pleas, Allegheny County, Criminal |
| v. | : | Division at Nos. CP-02-CR- |
| | : | 0008705-1994, CP-02-CR-009095- |
| | : | 1994 and CP-02-CR-0009201-1994. |
| LEROY FEARS, | : | |
| | : | SUBMITTED: July 7, 2020 |
| Appellant | : | |

## OPINION IN SUPPORT OF AFFIRMANCE

**JUSTICE MUNDY**                                         **DECIDED: May 18, 2021**

In this capital case, Appellant Leroy Fears appeals from an order of the Court of Common Pleas of Allegheny County denying relief pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. §§ 9541- 9546 ("PCRA"). We consider whether the circulation of inappropriate emails by former members of this Court during the consideration of Appellant's direct and post-conviction appeals constitutes a deprivation of Appellant's constitutional rights. We conclude it does not.

## I. Background

On December 8, 1994, Appellant pled guilty to one count of first-degree murder, one count of corruption of minors, and two counts each of involuntary deviate sexual intercourse and abuse of a corpse. A penalty hearing was conducted on February 2, 1995, at the conclusion of which Appellant was sentenced to death. Appellant appealed his sentence for reasons unrelated to his current petition. In 2004, this Court affirmed his

judgment of sentence. *Commonwealth v. Fears*, 836 A.2d 52, 56-58 (Pa. 2004), *cert. denied*, 535 U.S. 1141 (2005).

Subsequently, Appellant filed his first counseled petition pursuant to the PCRA. Appellant set forth claims regarding, *inter alia*, trial counsel's ineffectiveness, the voluntariness of Appellant's jury trial waiver, and violations of his due process rights. *See Commonwealth v. Fears*, 86 A.3d 795 (Pa. 2014). The PCRA court denied Appellant's claims, and he appealed. This Court denied Appellant's requested relief on February 19, 2014. Relevantly, Justice Eakin authored the majority opinion, and was joined by Justices Baer, Todd, McCaffery, and Stevens.[1]

Following the conclusion of Appellant's direct and collateral appeals, news accounts revealed that Justice Seamus McCaffery was involved in circulating inappropriate emails with members of the Office of the Attorney General ("OAG").[2] The emails were discovered during an investigation conducted by former Attorney General Kathleen Kane regarding an unrelated matter. The emails sent and received by then-Justice McCaffery included images that contained demeaning portrayals of various segments of the population, in addition to emails comprised of crude language on sensitive subject matters. Justice McCaffery retired from his service on this Court in October 2014.

Thereafter, Justice Michael Eakin was implicated in the scandal. In October 2015, the Philadelphia Inquirer reported that media outlets had come into possession of multiple emails from Justice Eakin's private email account. The emails had been in the possession

---

[1] Chief Justice Castille concurred in the decision, and then-Justice Saylor dissented.

[2] See Karen Langley, High Court Justice Sent Emails with Explicit Content, Pittsburgh Post Gazette (Oct. 2, 2014), https://www.post-gazette.com/news/state/2014/10/02/ Pennsylvania-environmental-secretary-resigns-amid-email controversy/ stories/201410020392

of the OAG, which obtained them when they were sent to the official email addresses of several OAG employees with whom Justice Eakin communicated informally.[3] The Inquirer detailed the content of several of the emails, many of which referenced race, religion, gender, sexual orientation, ethnicity, or class.[4] An October 30, 2015 report by the Special Counsel further described many of the emails. Report of the Special Counsel Regarding the Review of Justice Eakin's Personal Email Communications, Joseph A. Del Sole, Oct. 30, 2015. It specified that Justice Eakin did not send many of the racist or discriminatory emails, although he received a substantial number of them. *Id.* at 13. The emails that originated from Justice Eakin were characterized as "insensitive, chauvinistic and offensive to women." *Id.* The Special Counsel included in its report that the emails were repugnant in the eyes of the public. *Id.* at 24.

On February 8, 2016, Appellant filed the current PCRA petition, his second.[5] Appellant claimed Justice Eakin's emails demonstrated judicial bias, asserting they mocked minorities, victims of sexual abuse, and those involved with the criminal justice system, as well as containing homophobic content. Petition, 2/08/2016, at 15-18. Appellant alleged the emails directly related to Justice Eakin's ability to fairly adjudicate his case since Appellant, who is African-American, was sexually abused as a child. *Id.* at 16.

---

[3] Justice Eakin resigned from this Court on March 15, 2016.

[4] William Bender, A Supreme Court Justice's Indecent Inbox, The Philadelphia Inquirer (Oct. 8, 2015), https://www.inquirer.com/philly/news/20151008_A_ Supreme_Court_justice_s_indecent_inbox.html

[5] In 2014, Appellant filed a petition for writ of habeas corpus in the Western District of Pennsylvania. Appellant alleged various claims of ineffective assistance of counsel and constitutional violations. Following Appellant's filing of the instant petition, Appellant agreed to stay the federal habeas matter pending the resolution of this petition.

After filing his initial, counseled petition, Appellant wished to temporarily suspend his representation and proceed *pro se*. Following a hearing, the PCRA court determined Appellant adequately waived his right to representation and appointed Attorney Michael Machen as standby counsel. Hearing, 6/19/2018, at 9.

Appellant proceeded to file a series of amended petitions. In his first amended petition, he alleged Justice Eakin demonstrated an unconstitutional bias against groups with which Appellant identified through Justice Eakin's failure to actively participate in the Attorney General's investigation. Amended Petition, 7/31/18, at 2-6. Approximately one month later, Appellant again amended his petition to include the same claims of judicial bias against Justice McCaffery. Amended Petition, 9/21/18, at 2-7. As a result of Justice Eakin and Justice McCaffery's actions, Appellant argued the panel deciding his direct appeal and first amended PCRA petition was imbued with an insurmountable structural defect, which rendered these proceedings fundamentally unfair. *Id.* at 22 (citing *Johnson v. United States*, 520 U.S. 461 (1997)). Thus, Appellant alleged the proceedings violated his state and federal constitutional right to due process. *Id.* at 20 (citing *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

Lastly, in a document Appellant labeled as a supplement to his petition, Appellant argued the constitutionality of the death penalty under Pennsylvania law. Supplemental Petition, 8/17/18, at 2. Specifically, Appellant cited to the findings contained in the Joint State Government Commission's Report ("JSGC Report") to argue the death penalty violated Article I, Section 13 of the Pennsylvania Constitution. *Id.* at 11-34. As a result of the aforementioned arguments, Appellant's requested relief included, *inter alia*, the vacatur of his guilty plea and death sentence, and an order for a new trial and/or sentencing proceeding. *Id.* at 23. In acknowledgment of his facially untimely petition, Appellant alleged both avenues of relief relied on newly discovered facts, and thus

qualified under the same exception to the PCRA's timeliness requirement. *Id.* at 12 (citing

42 Pa.C.S. § 9545(b)(1)(ii)).[6]

On October 1, 2018, the Commonwealth filed an answer to the petition, conceding

the timeliness of Appellant's pleading, but refuting his claim of judicial bias. Specifically,

the Commonwealth argued the Court of Judicial Discipline found that Justice Eakin's

actions did not prejudice the administration of justice in any of the cases with which he

was involved, and thus could not form the basis of a judicial bias claim. Commonwealth

Answer at 13 (citing *In re Eakin*, 150 A.3d 1042 (Pa. Ct. Jus. Disc. 2016)). It pointed out

Justice Eakin was one of a number of justices to participate in the resolution of Appellant's

case, and was joined by others in his majority opinion regarding Appellant's first PCRA

petition. *Id.* at 14. Lastly, the Commonwealth asserted Justice Eakin's involvement was

mainly limited to receiving emails, which does not per se establish the presence of bias.

*Id.* (citing *Commonwealth v. Shannon*, 184 A.3d 1010 (Pa. Super. 2018)).

---

[6] At the time Appellant filed his second PCRA petition, Section 9545(b) provided as follows:

(b) Time for filing petition.--

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.

. . .

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

On March 29, 2019, the PCRA court filed a notice of its intention to dismiss Appellant's PCRA petition without an evidentiary hearing pursuant to Pa.R.C.P. 907. Appellant filed a response to the court's notice, which was subsequently denied. The PCRA court dismissed Appellant's petition on May 16, 2019. Appellant filed a timely notice of appeal to this Court. In his concise statement, which Appellant filed on August 7, 2019, he raised the following claims *verbatim*:

1. This court has jurisdiction under 42 Pa.C.S. § 9545(b)(1) to address the substance of my claims.

2. My judicial bias claim was timely under 42 Pa.C.S. § 9545(b)(1). This court's summary dismissal of my amended and supplemental petitions without a hearing violated my due process and equal protection rights where my claim was first filed within 60-days of when the facts supporting the claim were publically [sic] revealed in the Judicial Conduct Board complaint filed against Justice Eakin. *In re J. Eakin*, 13 JD 2015.

3. My judicial bias claim based on the email scandal was not frivolous. Justice Eakin was a party to emails which revels [sic] an inappropriate bias against African American person, gay persons, victims of domestic violence and persons involved in the criminal justice system. As a result, I did not receive a fair adjudication of my direct and post-conviction appeals, in violation of the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, and Article 1, §§ 9 & 13 of the Pennsylvania Constitution.

4. My judicial bias claim is based on the Join [sic] State Government Commission's report regarding the death penalty (Capital Punishment in Pennsylvania: The Report of the Task Force and Advisory Committee, June 2018), was timely under the newly discovered facts and supplemental petitions without a hearing violated my due process and Sixth Amendment rights where my claim was filed within 60 days of when the facts supporting the claim were publically revealed in the report.

5. My claim based on the Join [sic] State Government Commission's report regarding the death penalty (Capital Punishment in Pennsylvania: The Report of the Task Force and Advisory Committee, June 2018) was not frivolous. Pennsylvania's capital punishment system is broken and

violates Article I, Section 13 of the Pennsylvania Constitution and the Eighth Amendment to the United States Constitution.

6. The court violated my due process rights by not allowing for discovery.

Rule 1925(b) Statement, 9/07/2019.

On October 2, 2019, the PCRA court filed its Rule 1925(a) statement. In regards to the timeliness of Appellant's petition, the court found it satisfied the requirements of the newly discovered fact exception. PCRA Ct. Op., 10/02/2019, at *6. Citing *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007), the court stated the exception set forth in Section 9545(b)(1)(ii) "does not require any merits analysis of the underlying claim." *Id.* at *4. Without further examination, the PCRA court concluded that "[Appellant] has demonstrated that his instant PCRA petition was timely filed within the exception to the one-year requirement under the newly discovered evidence requirements, and was . . . timely filed within the 60-day period following the discovery of new facts." *Id.* at *5.

Despite finding the petition timely, the court concluded Appellant's collateral claims regarding Justice Eakin's emails were ultimately meritless under the after-acquired evidence provision of the PCRA statute. The court relayed that pursuant to Section 9543, which governs a petitioner's eligibility for relief on the merits, relief may be owed to a party where a litigant demonstrates, by a preponderance of the evidence, that the evidence: "(1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." *Id.* at *5 - *6 (citing 42 Pa.C.S. § 9543(a)(2)(vi); *Commonwealth v. Pagan*, 950 A.2d 270 (Pa. Super. 2008)). Specifically, the court concluded Appellant did not satisfy the fourth prong since he failed to demonstrate "the judicial bias would have altered the outcome of any of his proceedings, including the direct appeal of his initial PCRA petition." *Id.* at *8. The PCRA court relied on the fact that

independent sources had concluded there was no evidence that Justice Eakin ever demonstrated overt bias in his written opinions, and had decided each case in accordance with the facts and the law. *Id.* at *8.

## II. Jurisdiction

This matter is properly before this Court pursuant to 42 Pa.C.S. § 9546(d) ("A final court order under this subchapter in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules."). However, in order to evaluate the merits of Appellant's claim, we must first have jurisdiction over the matter. *See* 42 Pa.C.S. § 9545. Without jurisdiction, we are unable to consider the merits of Appellant's argument. *See Commonwealth v. Fahy*, 737 A.2d 214, 220 (Pa. 1999) (holding that where a party fails to satisfy the PCRA time requirements, this Court has no jurisdiction to entertain the petition). Should Appellant establish jurisdiction, we then consider whether the PCRA court's ruling is supported by the record and free from legal error. *Commonwealth v. Rainey*, 928 A.2d 215, 223 (Pa. 2007). We review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Williams*, 196 A.3d 1021 (Pa. 2018).

## III. The Parties' Arguments

As we glean from Appellant's submitted brief, he contests the PCRA court's decision because it deprived him of impartial judicial review by an unbiased panel of this Court. Appellant contends Justice Eakin's email account and the contents therein evidence the Justice's inability to decide cases impartially, including Appellant's.[7] Further, he argues the PCRA court erred in requiring he demonstrate actual bias in satisfaction of the after-acquired evidence provision of the PCRA statute, claiming only

---

[7] At various points in his brief, Appellant suggests his direct appeal was also impartially decided. Appellant's direct appeal was written by Chief Justice Cappy and decided in 2004, which was before Justice McCaffery joined the Court.

the appearance of bias is required. He further states the court erred in determining that the evidence of Justice Eakin's email account would not have changed the outcome of any of his proceedings, including his direct appeal.

Citing *Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016), Appellant contends Justice Eakin's alleged bias resulted in a structural defect in the adjudication of his case. In support of this argument, Appellant again restates the content of Justice Eakin's email account, and the subject matter contained therein. Lastly, Appellant questions the PCRA court's reliance on special counsel's determination regarding the presence of bias in Justice Eakin's decisions.

Similarly, Appellant also contends a deprivation of his constitutional rights based on judicial bias stemming from Justice McCaffery's email scandal. Appellant claims Justice McCaffery's email activity demonstrates his inability to decide the cases before him in an objective and fair manner. In support of his claim, Appellant details the contents of several emails discovered during the investigation into Justice McCaffery's account. Appellant argues a "heightened reliability standard" applies in death penalty cases, and that under this standard, he did not receive a fair determination based on the Justices' biases. As a result of this alleged judicial bias, Appellant claims this Court violated his due process rights pursuant to the Constitutions of the United States and this Commonwealth.

Appellant further contests the PCRA court's decision, claiming he was precluded from viewing the contents of Justice Eakin and Justice McCaffery's email accounts that were not released to the public. He implicates standby counsel's actions, claiming counsel's alleged refusal to assist to him in reviewing the material.

Lastly, Appellant disputes the propriety of the death penalty in Pennsylvania. In a lengthy passage spanning nearly twenty-five pages, Appellant discusses the findings

contained in the JSGC Report.[8]  Appellant claims the JSGC Report demonstrates that Pennsylvania's capital punishment system is unconstitutional and arbitrarily imposed.

In response, the Commonwealth argues that the PCRA court correctly decided that Appellant failed to prove he is due any relief, as he fails to demonstrate Justice Eakin's emails constitute after-acquired evidence within the parameters of the PCRA statute.[9] Commonwealth's Brief at 23 (citing *Commonwealth v. Pagan*, 950 A.2d 270 (Pa. Super. 2008) ("In order to obtain relief based on after-acquired evidence, Appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of due diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.")).  Specifically, the Commonwealth asserts that Appellant failed to show there was any unconstitutional bias during the course of his first PCRA appeal that would have changed its outcome.  It argues that for the most part, Justice Eakin passively received emails rather than participated in sending them. The emails that he did send contained no racial animus or otherwise. It notes that only two emails sent by Justice Eakin even mention race, but asserts that mention of the topic does not prove animus. Commonwealth's Brief at 28 (citing *In re Eakin*, 150 A.3d 1042, 1048 (Pa. Ct. Jus. Disc. 2016)).

---

[8] "Capital Punishment in Pennsylvania: The Report of the Task Force and Advisory Committee," Joint State Government Commission Report, June 2018.

[9] The Commonwealth concedes Appellant meets the jurisdictional requirements of the PCRA statute pursuant to Section 9545(b)(1).  According to the Commonwealth, Appellant satisfies the exception to the time bar because his petition was based on the newly-discovered fact of Justice Eakin's emails—facts which were neither known nor able to be ascertained by the exercise of due diligence.  Since Appellant filed his PCRA petition within sixty days of December 8, 2015, the date the disciplinary complaint was filed against Justice Eakin, the Commonwealth asserts jurisdiction has been satisfied.

Alternatively, even if the emails demonstrated bias, the Commonwealth asserts that it does not follow that such bias affected Justice Eakin's decisions. It claims that Appellant has not presented any evidence of such bias in Justice Eakin's jurisprudence, as evidenced by his adherence to the facts and law of each case. Commonwealth's Brief at 32 (citing *In re Eakin*, 150 A.3d at 1060 (noting that the Judicial Conduct Board has not produced any evidence that Justice Eakin has ever demonstrated any overt bias in his written judicial opinions.)). The Commonwealth highlights the fact that Appellant has provided no evidence that Justice Eakin exercised any bias while penning the majority opinion in his first PCRA. Moreover, it points out, Justice Eakin was one of five Justices who affirmed the lower court's decision. Thus, if the decision had been biased, the Commonwealth reasons the opinion would not have garnered a majority at all.

Next, the Commonwealth argues that Appellant's claims regarding Justice McCaffery's alleged bias do not entitle him to relief, in part because they are waived, and in part because of the same reasons Appellant's previous claim fails. The Commonwealth reiterates that it is unlikely that the decision in Appellant's first PCRA case would have been joined if it demonstrated any bias.

Based on the futility of Appellant's preceding claims, the Commonwealth maintains he was properly denied discovery. The Commonwealth asserts that he is not entitled to discovery since he has failed to show any need for the compact discs containing Justice Eakin's or Justice McCaffery's emails.

Lastly, the Commonwealth asserts that Appellant is not entitled to relief on his claim regarding the constitutionality of the death penalty since it does not satisfy the jurisdictional requirements set forth under the newly-discovered fact exception. It argues that much of the information contained within the JSGC Report was within the public domain before June 2018, or when Appellant claims he discovered it. Commonwealth's

Brief at 51 (citing *Commonwealth v. Lark*, 746 A.2d 585 (Pa. 2000) (asserting that publicly available information does not constitute a newly discovered fact.)). Even assuming *arguendo* that the Report passed jurisdictional muster, the Commonwealth argues its admission either during trial or during Appellant's first PCRA petition would not have changed the outcome of his adjudication since the death penalty remains legal in Pennsylvania.

## IV. Analysis

### A. Timeliness of Appellant's Second PCRA Petition

Preliminarily, Appellant does not present a petition that meets the jurisdictional requirements of this Commonwealth's PCRA statute.[10] Specifically, Appellant fails to present a "fact" that meets the jurisdictional requirements of our PCRA statute, and fails to set forth any information regarding the statute's due diligence requirement.

As we have stated before, to be eligible for post-conviction relief, a party must prove by a preponderance of the evidence that his conviction or sentence resulted from one of the statute's enumerated circumstances, *see* 42 Pa.C.S. § 9543(a)(2), and that the issues have not been previously waived, *id.* § 9543(a)(3). A PCRA petition, including a second PCRA petition, must be filed within one year of a final judgment, unless a party pleads and proves he is entitled to one of the exceptions to the general rule. 42 Pa.C.S. § 9545(b). This limitation is jurisdictional. *Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007). As stated above, Appellant claims his petition is timely under our collateral relief statute pursuant to Section 9545(b)(1)(ii). Accordingly, appellant is charged with establishing "1) the *facts* upon which the claim is predicated were *unknown* and 2) could

---

[10] This Court is entitled to consider jurisdictional questions *sua sponte*. *See e.g., DEP v. Cromwell Twp., Huntingdon Cty.*, 32 A.3d 639, 646 (Pa. 2011) ("The question whether a court has jurisdiction . . . may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*.").

not have been ascertained by the exercise of due diligence." *Bennett*, 930 A.2d at 1272 (italics in original). If a petitioner can establish both components, then jurisdiction over the matter may be exercised. *Commonwealth v. Blakeney*, 193 A.3d 350 (Pa. 2018). Without jurisdiction, this court does not have the legal authority to address substantive claims. *See Commonwealth v. Cox*, 146 A.3d 221, 226 (Pa. 2016) ("a court may not address the merits of any claim raised unless the petition was timely filed or the petitioner proved that one of the three exceptions to the timeliness requirement applies"); *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267-68 (Pa. 2008) ("The PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed.").

While the law provides that Appellant need not provide a nexus between the newly discovered fact and his conviction, he still must provide a connection between the fact and his underlying claim. *See Bennett, supra*, at 1273; *see also Commonwealth v. Robinson*, 204 A.3d 326, 354 (Pa. 2018) (Dougherty, J. OISA) ("While I appreciate the test for application of when newly-discovered facts will overcome the PCRA time bar prohibits a merits analysis, the test does require that the claim be predicated on previously unknown facts.").[11] Appellant fails to meet his burden, as he does nothing more than set forth vague claims of various types of bias that allegedly permeated the review of his

---

[11] The Opinion in Support of Reversal (OISR) submits that our analysis here imposes a heightened nexus requirement, under which we effectively engage in a merits-based inquiry. OISR at 12. As we have stated before, a petitioner bears the burden of proving the applicability of one of the timeliness exceptions. *Commonwealth v. Pursell*, 749 A.2d 911, 914 (Pa. 2000). Moreover, whether a petitioner has carried his or her burden is a threshold inquiry prior to considering the merits of any claim. *See Commonwealth v. Beasley*, 741 A.2d 1258, 1261 (Pa. 1999). Thus, we require Petitioner prove the new "fact" (i.e., offensive emails displaying cultural biases which implicate his case) upon which his claim is predicated. *See e.g., Commonwealth v. Blakeney*, 193 A.3d 350, 367 (Pa. 2018).

direct and collateral appeals. Appellant essentially proposes the unsavory nature of Eakin's email account per se establishes his underlying claims regarding the violation of his Constitutional rights. However, upon a careful evaluation of the sources cited by Appellant, support for his claim falls short. Appellant attempts to maintain his burden by citing to the Judicial Conduct Board opinion and Special Counsel report. Both renderings determined that Justice Eakin did not send any emails implicating the topics alleged by Appellant, and received only a few emails invoking the invidious subject matter. As the Commonwealth argues in its brief (though in a different portion than that addressing timeliness), there is a profound difference between sending and receiving emails. Commonwealth's Brief at 26; *See also Blakeney*, 193 A.3d at 378 ("We should not overlook the fact that the allegation of bias here is based on the receipt of an email[.]"). The mere receipt of invidious emails "should not be elevated to a finding of the existence of judicial bias as a material fact." *Commonwealth v. Blakeney*, 193 A.3d 350, 378 (Pa. 2018) (Dougherty, J. OISA).

As has been reiterated before, the undesirable content of these emails does not excuse a party from meeting the basic standards of this Commonwealth's pleading requirements. *Id.* at 367 ("Of course the emails are repugnant, but their mere existence does not demonstrate the fact of bias."). Even though our jurisdictional query is not (and should remain separate from) an analysis of the merits, Appellant is still required to state his claim and demonstrate how those issues will be proved. *Commonwealth v. Rivers*, 786 A.2d 923, 927 (Pa. 2001). Permitting a party to overcome the PCRA's jurisdictional requirements with such scant evidence predicating his claim of unconstitutional bias weakens the exception, which this Court relies on to safeguard against groundless claims.

Moreover, Appellant fails to demonstrate he exercised due diligence in ascertaining the very facts he asserts. In *Commonwealth v. Reid*, 235 A.3d 1124 (Pa.

2020), this Court evaluated the propriety of a PCRA petition filed well after the one year timeline prescribed under the statute. Following the Supreme Court's decision in *Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016), Reid, the appellant, claimed, *inter alia*, that jurisdiction over his petition existed based on the newly discovered fact that Chief Justice Castille, in his previous capacity as District Attorney, had authorized the trial prosecutor's request to seek the death penalty. *Reid*, 235 A.3d at 1149. Specifically, Reid claimed this fact, to which the Commonwealth later conceded, created an impermissible risk of actual bias that violated his Constitutional rights. *Id.* at 1148 (citing *Williams*, 136 S.Ct. at 1905). This Court determined Reid did not meet his burden in establishing jurisdiction because evidence of District Attorney Castille's involvement in capital cases began emerging as early as 1993, when articles divulging this information were publicly reported. *Id.* at 1152. Since Reid failed to exercise due diligence in ascertaining the facts he alleged predicated his claim, this Court determined he failed to satisfy the exception to the PCRA time bar. *Id.* at 1153.

Similarly, Appellant fails to demonstrate he meets the requirements of due diligence. In fact, Appellant sets forth no information regarding his ascertainment of the information which he alleges. *See Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 590 (1999) (60 day requirement of section 9545(b)(2) not satisfied where defendant failed to explain why alleged information could not, with the exercise of due diligence, been obtained earlier); *see also Commonwealth v. Breakiron*, 781 A.2d 94 (Pa. 2001). Rather, he merely asserts he timely filed his petition exactly sixty days after December 8, 2015, or when the Judicial Conduct Board first filed a complaint against Justice Eakin. However, the information upon which Appellant's claims are predicated was ascertainable upon the exercise of due diligence nearly two months before, or when the Philadelphia Inquirer article was first published on October 8, 2015. Like Reid, Appellant at this point had

reason to question the propriety of his case in light of publicly available information. However, Appellant did not, nor did he explain in his petition how or when he became aware of any of the preceding information. He does not explain to this Court or the court below how he was attuned to the Judicial Conduct Board's court filings, and not a widely publicized newspaper article concerning a topic of broad public importance.[12]

Confusingly, Appellant implicates only Justice Eakin's emails in his bid for jurisdiction. However, had Appellant attempted to establish jurisdiction by asserting the revelation of Justice McCaffery's email account as a newly discovered fact, our determination would not have been altered. In such a situation, Appellant's petition would not have been filed within sixty days of the date his claim could have been presented, considering the Judicial Conduct Board rendered a decision regarding the McCaffery emails on October 20, 2014. *See In re McCaffery*, 430 Judicial Administrative Docket (Pa. 2014). Accordingly, based on the information Appellant sets forth, he has failed to demonstrate that he has brought his claim within sixty days of when his claim "could have been presented." 42 Pa.C.S. § 9545(b)(2). Since Appellant fails to satisfy the requirements of the newly discovered fact exception to the PCRA statute's time bar, this Court is unable to exercise its jurisdiction over his claims.

### B. Merits of Appellant's PCRA Claims

---

[12] By asserting that we "implicitly [rely] upon the public record presumption," the OISR misses the import of this passage. OISR at 16. We do not charge Petitioner with the knowledge of these records based upon their availability to the public. The OISR is correct that such a requirement would be in violation of our holding in *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020). Rather, in finding Petitioner failed to establish jurisdiction, we rely on the dearth of information provided by Petitioner regarding any exercise of diligence at all. While the OISR would allow Petitioner a second chance to include more of the right kind of information, we submit it is the responsibility of a petitioner to plead the information upon which jurisdiction may be exercised and relief may be afforded.

**1. PCRA Court correctly determined Appellant's claim did not satisfy the after-acquired evidence rule.**

While our inquiry could end based on the lack of jurisdiction, because this Court has an established disagreement on the topic of jurisdiction, we will alternatively address the merits of Appellant's claims. *See Commonwealth v. Blakeney*, 193 A.3d 350 (Pa. 2018); *see also Commonwealth v. Robinson*, 204 A.3d 326 (Pa. 2018). We conclude the PCRA court correctly determined Appellant's claims do not warrant relief under our collateral relief statute.[13] As stated above, Appellant seeks to obtain relief as a result of the information that came to light regarding Justice Eakin and Justice McCaffery's email accounts. In its 1925(a) statement, the PCRA court determined Appellant implicated the after-acquired evidence basis for relief.[14]

In order to obtain relief under our PCRA statute, a party must demonstrate by a preponderance of the evidence that his conviction or sentence resulted from several stated bases of relief. *See* 42 Pa.C.S. § 9543(a)(2). Under Section 9543(a)(2)(vi), relief may be due where a party demonstrates "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." In order to obtain relief based upon exculpatory, after-discovered evidence, a party must demonstrate that: "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not used solely

---

[13] Appellant's petition and brief before this Court are poorly drafted, particularly in the manner in which he seeks to articulate discrete legal bases upon which relief may be granted.

[14] As this Court has noted before, this test for "after-acquired evidence" offers a substantive basis for relief. It differs in form and function from the test outlined in the previous section describing the "newly discovered fact" test, which provides an exception to the jurisdictional time bar. *See Commonwealth v. Bennett*, 903 A.2d 1264, 1270-72 (Pa. 2007).

to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. D'Amato*, 856 A.2d 806, 832 (Pa. 2004).

On appeal from the dismissal of Appellant's PCRA petition, our review is limited to examining whether the trial court's determination is supported by the evidence of record and free of legal error. *Commonwealth v. Ali*, 86 A.3d 173, 177 (2014). Our review of issues of law is de novo, and our scope of review is plenary. *Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011).

We have little trouble concluding that the PCRA court properly dismissed Appellant's claims.[15] Specifically, the court was correct in concluding that Appellant did not demonstrate that the emails, or any alleged bias he purports they reflect, would have altered the outcome of his proceedings. As the PCRA court aptly points out, Appellant avers no facts that would have resulted in a different outcome in any of his proceedings. The Court of Judicial Discipline found there was no evidence that Justice Eakin "in his written judicial opinions, ever demonstrated any overt bias due to the race, gender, ethnicity, or sexual orientation of a litigant or witness." *In re Eakin*, 150 A.3d 1042, 1048 (Pa. Ct. Jus. Disc. 2016).

Even if we were to ignore the well-reasoned conclusions of the Court of Judicial Discipline, a quick survey of Justice Eakin's email account supports our conclusion. As the Commonwealth points out and as discussed *supra*, Justice Eakin only participated in sending a small number of emails. The overwhelming majority of emails implicated in this incident were sent by others, including all of the emails containing the invidious subject matter cited by Appellant. Though we do not condone participating in exchanging emails

---

[15] This is not to say the PCRA court correctly assumed Appellant implicated the after-acquired evidence basis for relief. In fact, after a review of Appellant's PCRA petition, we find no mention of relief on the basis of after-acquired evidence.

of this ilk, this Court would be hard pressed to find any connection between the inappropriate and offensive subject matter and Justice Eakin's execution of his responsibilities as a member of this Court.[16]

Moreover, the constraints of our post-conviction relief statute make it unlikely this Court is able to grant Appellant's requested relief. Under the PCRA statute, when considering the propriety of affording relief based upon the alleged presence of after-acquired evidence, we are limited to examining the effect of the evidence on the litigant's *trial*. Clearly, the fundamental timing requirement of our statute as specified by our legislature precludes relief in Appellant's case for multiple reasons. First, Appellant never stood trial; rather, he entered an open guilty plea in February 1994. Second and most critical is the fact that none of these emails were in existence at the time of Appellant's trial-level proceedings. The earliest known emails originated in 2008, which far postdates the time during which Appellant's case was in the guilt-determining phase. Fundamentally, this avenue of relief remains inapplicable to the very facts which Appellant

---

[16] The OISR argues that, for several enumerated reasons, the Judicial Conduct Board's review does not provide the right kind of information, and as a result, additional fact-finding is necessary. OISR at 24. We disagree. First, the Judicial Conduct Board examined "only" 943 emails because that's exactly how many were submitted by the Attorney General's office. *See* JCB Compl., at 23, ¶ 64. Second, while the Board "only" described a small portion of the emails submitted by the Attorney General's office, OISR at 25, it still examined the full panoply of emails and labeled them according to the invidious subject matter which each demonstrated. Lastly, the CJD relied on a factual recitation substantially similar to the one put together by the JCB because the parties entered into a joint stipulation in lieu of trial. *In re Eakin*, 150 A.3d 1042, 1047 (Pa. Ct. Jus. Disc. 2016) ("In addition to factual stipulations, the parties have also stipulated to the authenticity and admissibility of all exhibits set forth in their respective pre-trial memoranda . . .."); *see also* Joint Stipulations of Fact in Lieu of Trial and Waiver of Trial, 2/22/16. We thus disagree with the assessment that "90% of the total number of emails [were] excluded by choice from the CJD's review." OISR at 25. Rather, from our perspective, the CJD relied upon the information submitted to it and agreed upon by the parties, who evaluated and organized the information for efficient review. Unlike the OISR, we are satisfied that an objective evaluation of any alleged bias can be (and has been) determined. OISR at 25-26.

presents in his petition for relief and brief before this Court. Appellant makes no argument otherwise, and does not attempt to reimagine Section 9545(a)(2)(vi) in a way that would suggest it exists as a viable theory providing relief. Accordingly, we affirm the PCRA court's determination that Appellant does not establish he is due any relief based on the after-acquired evidence rule under the PCRA statute.

### 2. Appellant's claim does not warrant relief since neither his conviction nor sentence resulted from any constitutional defect.

Notably, the PCRA court fails to address the viability of Appellant's claim to relief on the grounds of a constitutional violation during appellate review of his first PCRA petition. Considering Appellant makes it a central part of his petition to contest the constitutionality of the adjudication of his first PCRA appeal, we find it necessary to weigh in on these claims. As stated above, Appellant argues his first PCRA petition was not decided fairly as a result of judicial bias. Due to this alleged judicial bias during the consideration of appellate review of his petition, Appellant claims a violation of his due process rights under the United States Constitution, as well as the Constitution of this Commonwealth.[17] He claims the proper remedy includes but is not limited to: the vacation of his guilty plea, a new trial/sentencing proceeding, or the *nunc pro tunc* reinstatement of his ability to appeal prior post-conviction proceedings.[18]

---

[17] Appellant also confusingly implicates nearly every other constitutional right that has any arguable relevance in a heading located in a section of his petition entitled "Claim for Relief." PCRA Petition, 2/08/16, at p. 15. However, Appellant only addresses the due process clause and judicial bias claims substantively. Since Appellant does not include any argument regarding any other constitutional clauses, we only address issues related to the Fourteenth Amendment right to due process.

[18] This is what we assume Appellant seeks in his prayer for relief, wherein he requests relief in the form of "reopen[ing] post-conviction proceedings." PCRA Petition, 2/08/16. p. 23.

Under our PCRA statute, relief may be due where a conviction or sentence results from "a violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i). The Fourteenth Amendment guarantees that no state "shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. XIV, Sec. 1. Due process concerns extend to the actions of the judiciary; accordingly, litigants are guaranteed an absence of actual bias on the part of any judge adjudicating their case. *In re Murchison*, 349 U.S. 133 (1955). The concept of bias encompasses matters in which an adjudicator has "a direct, personal, substantial, [or] pecuniary interest" in the outcome of the matter. *Tumey v. Ohio*, 47 S.Ct. 437, 441 (1927). While a fair trial is indeed "a basic requirement of due process," *Murchison, supra*, 349 U.S. at 136, "most matters relating to judicial disqualification [do] not rise to a constitutional level." *FTC v. Cement Institute*, 333 U.S. 683 (1948). In order to determine whether a judge harbors an unconstitutional level of bias, the inquiry is an objective one wherein the requisite question is whether "the average judge . . . is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016) (citing *Caperton v. Massey Coal Co., Inc.*, 129 S.Ct. 2252 (2009) (internal citations excluded)). The Supreme Court has determined that there is an impermissible risk of actual bias when a judge has had "significant, personal involvement . . . in a critical decision regarding [the litigant's] case." *Williams*, 126 S.Ct. at 1905.

Even assuming Appellant is entitled to his requested relief,[19] we are unable to discern even a hypothetical basis upon which relief could be granted. Unlike in *Williams*, where the High Court determined that Justice Castille's[20] previous involvement as a prosecutor constituted a significant personal involvement, no one adjudicating Appellant's direct appeal or previous PCRA petition was involved in prosecuting this case. Justice Eakin did not have any prior interaction with Appellant's case prior to it being argued before this Court. Moreover, Justice Eakin's email account and the content contained therein does not render him a biased jurist. His participation in the inappropriate email activity had no bearing on his ability to fairly apply the law to the facts of Appellant's case. As stated above, an independent evaluation confirmed what should be a common sense conclusion: that none of Justice Eakin's written opinions contained any bias, and certainly none that reached the levels of constitutional interference. *In re Eakin*, 150 A.3d 1042, 1048 (Pa. Ct. Jus. Disc. 2016). Thus, to the extent Appellant even attempts to litigate this issue, we conclude Appellant would be unable to establish his right to collateral relief under the theory that his conviction or sentence was the result of a constitutional defect.

### 3. Appellant is due no relief on his claim regarding the Joint State Government Commission Report.

In his brief to this Court, Appellant lastly argues he is due relief under the PCRA statute as a result of the findings contained within the JSGC Report. Notably, Appellant does not include this argument in his petition for PCRA relief. Rather, he argues this for the first time in a supplement to a petition, as noted *supra*. Thus, we find Appellant has waived this argument based on his failure to properly plead this issue by seeking leave

---

[19] This Court has fiercely debated a lower court's ability to grant *nunc pro tunc* relief in response to an appellate court's error. *See Commonwealth v. Taylor*, 218 A.3d 1275 (Pa. 2019), *Commonwealth v. Koehler*, 229 A.3d 915 (Pa. 2020).

[20] Justice Castille was a member of this Court until his retirement in 2014.

to amend his petition. Pa.R.Crim.P. 905(A) ("The *judge* may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time." (emphasis included)). As is clear from our rules of criminal procedure, a party must seek leave to amend, as amendments (or supplements) are not self-authorizing. *See Commonwealth v. Porter*, 35 A.3d 4, 12 (Pa. 2012); *see also Commonwealth v. Baumhammers*, 92 A.3d 708, 730 (Pa. 2014) ("[I]t is clear from the rule's text that leave to amend must be sought and obtained, and hence, amendments are not 'self-authorizing'.").

## V. Conclusion

After a review of the PCRA court's decision to dismiss Appellant's claim without an evidentiary hearing, we agree that the court did not err in its actions. Appellant is unable to set forth a claim under the PCRA statute pursuant to which he is entitled to collateral relief. First, Appellant does not establish jurisdiction over his claims regarding Justice Eakin and Justice McCaffery's emails. He is unable to provide a connection between the facts he alleges and the Constitutional violations he claims they predicate, nor how he obtained this information with due diligence. Regardless of Appellant's ability to establish an exception to the PCRA statute's timeliness requirement, the PCRA court did not err in dismissing his claims. Appellant fails to set forth any evidence he is due relief on his conviction or sentence based on the presence of after-acquired exculpatory evidence, or that his conviction resulted from a constitutional defect. Moreover, Appellant waives his argument regarding the contents of the JSGC Report, as he improperly declined to seek leave of the PCRA court in order to amend his petition. Accordingly, the PCRA court correctly dismissed Appellant's petition without affording any relief.[21]

---

[21] Based on this Court's decision regarding Appellant's central petition, we dismiss as moot Appellant's outstanding ancillary application for sua sponte judgment, application to clarify prayer for relief, application to supplement Appellant's claim regarding the death penalty's constitutionality, application for post-submission communication pursuant to

Justice Dougherty joins this Opinion in Support of Affirmance.